**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*P. Michael Cunningham*
*Assistant United States Attorney*
*michael.cunningham@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201*

*Direct: 410-209-4884*
*Main: 410-209-4800*
*Fax: 410-962-3091*

April 6, 2015

Charles L. Waechter, Esquire
Law Office of Charles L. Waechter
1435 Sulphur Spring Road
Baltimore, MD 21227

    Re:    *United States v. Micheal P. Jordon*
             <u>Criminal Number:  ELH-15-0104</u>

Dear Mr. Waechter:

        This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office").  If the Defendant accepts this offer, please have him execute it in the spaces provided below.  If this offer has not been accepted by April 24, 2015, it will be deemed withdrawn.  The terms of the agreement are as follows:

<u>Offense of Conviction</u>

        1.       The Defendant agrees to plead guilty to Count One of the Indictment now pending, in which he is be charged with distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2256(8)(A) .  The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

        2.       The elements of the offense to which the Defendant has agreed to plead guilty, and which these Offices would prove if the case went to trial, are as follows:

<u>Distribution of Child Pornography</u>

        a.       First, on or about the date charged in the Indictment, the defendant knowingly distributed in or affecting interstate commerce a visual depiction;

      b.      Second, the visual depiction was transported in or affecting interstate commerce *or* the visual depiction was produced using materials that had been transported in or affecting interstate commerce;

      c.      Third, the visual depiction was child pornography; and

      d.      Fourth, the defendant knew of the sexually explicit nature of the material and that the visual depiction was of an actual minor engaged in that sexually explicit conduct.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: not more than twenty (20) years' incarceration, with a mandatory minimum sentence of five (5) years' incarceration, a $250,000 fine, and a lifetime of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.      The defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: where the defendant resides; is an employee; or is a student. The defendant understands that the requirements for registration include providing true name, residence address, and names and addresses of any places where the defendant is or will be an employee or a student, among other information. The defendant further understands that the requirement to keep the registration current includes information at least one jurisdiction in which the defendant resides, is an employee, or is a student not later than three business days after any change of the defendant's name, residence, employment, or student status. The defendant has been advised, and understands, that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment or both.

## Waiver of Rights

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

5.   The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.   The Defendant has the right to have his cases presented to Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

   b.   If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   c.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   d.   If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   e.   The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   f.   If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   g.   By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    h.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    i.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

  6.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

  7.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a.  The base offense level, pursuant to U.S.S.G. §2G2.2(a)(2), is 22;

    b.  There is a two (2) level increase pursuant to §2G2.2(b)(2) because the material involved a prepubescent minor.

    c.  There is a five (5) level increase pursuant to §2G2.2(b)(3)(B) because the defendant distributed the child pornography in expectation of receiving a thing of value, but not for pecuniary gain, to wit: access to the recipient's prepubescent daughter for the opportunity to engage in sexual acts.

    d.  There is a two (2) level increase pursuant to §2G2.2(b)(6) because the offense involved the use of a computer.

    e.  There is a five (5) level increase pursuant to §2G2.2(b)(7)(D) because the offense involved 600 or more images.

4

Thus, the total offense level before any adjustment for acceptance of responsibility is **36**.

    f.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.

The resulting final offense level is **33**.

8.  The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9.  This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

<u>Obligations of the United States Attorney's Offices</u>

10.  At the time of sentencing, this Office will recommend a reasonable sentence pursuant to 18 U.S.C. § 3553.

11.  The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

<u>Forfeiture</u>

12.  The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order will include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property subject to forfeiture. Specifically, as a consequence of the Defendant's plea of guilty to Count One charging a violation(s) of 18 U.S.C. § 2252A(a)(1), the court will order the forfeiture of any and all items seized during the search of the defendant's residence including but not limited to:

      a.      Toshiba laptop

      b.      ASUS laptop

      c.      Seagate external 320GB hard drive

      d.      Western Digital external 500GB hard drive

13. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

## Assisting the Government with Regard to the Forfeiture

14. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant also agrees to give this Office permission to request and review his federal and state income tax returns, and any credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) as well as whatever disclosure form may be required by any credit reporting entity.

## Waiver of Further Review of Forfeiture

15. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Restitution

16. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and

§§3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the high end of the applicable guideline range (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below the statutory, mandatory minimum term of imprisonment.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

18. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a

finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

19. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

8

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *(signature)*

P. Michael Cunningham
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

4-10-15
Date

*(signature)*
Micheal P. Jordon

I am Micheal P. Jordon's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4-10-15
Date

*(signature)*
Charles L. Waechter, Esquire

9

## Attachment A

## Statement of Facts

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

The Defendant, Micheal P. Jordon, is 35 years old and was, until sometime in the spring of 2014, a resident of Elkton, Maryland.

Beginning in early 2014, the Defendant became the subject of a Federal Bureau of Investigation ("FBI") criminal investigation based on suspicion that he had a sexual interest in young children. On January 21, 2014, an FBI undercover agent ("UC") working on the internet in a chat room known to promote incest, engaged in an on-line chat with an individual, later identified as the Defendant, utilizing the screen name and/or user name "LovesLittleGirls". In response to the UC's chat room message, "[a]ny other active pervs in the Virginia area," the Defendant initiated a private chat. The following is the pertinent chat between the Defendant (using LovesLittleGirls) and the UC from their private chat:

> **LovesLittleGirls:** maryland here... wish I was active
> **UC:** mine is 8 DC here
> **LovesLittleGirls:** mmmmm
> **LovesLittleGirls:** such a perfect age
> **UC:** yes, love getting head from her and cummin all over her
> **LovesLittleGirls:** I'm envious brother... sure wish I could join you
> **UC:** would be hot to see her with another cock , where in Md
> **LovesLittleGirls: Elkton... almost by DE**... but I get down to DC all the time
> **UC:** ah, ok a bit far im 43 you ?
> **LovesLittleGirls:** 34
> **LovesLittleGirls:** Like I said I come down to DC all the time for work
> **UC:** cool, you have yahoo, like i said im cool with it as long as i know your cool and you feel the same about me
> **UC:** have you ever played before
> **LovesLittleGirls: yeah I have yahoo**
> **LovesLittleGirls:** once a while back...
> **UC:** whats your yahoo
> **LovesLittleGirls:** but I am totally cool and would play things your way
> **UC:** cool, what is your yahoo?
> **UC:** i do have a few pics of her for the trust thing, do you have any?
> **LovesLittleGirls: pervyguy4yng**
> **LovesLittleGirls: I have pics for trade**
> **LovesLittleGirls:** would love to see her

**UC:** ok cool, ill add you on yahoo
**UC:** cool, im [UC provided his Yahoo screen name]
**UC:** i just added you
**LovesLittleGirls:** cool

The UC and the Defendant quit the chat room and moved to Yahoo Instant Messenger ("YIM"). Using YIM, the UC and the Defendant, using the name "pervyguy4yng", continued their exchange about having sex with their young relatives. Following is an extract of that exchange:

**UC:** hey from incest?
**UC:** im john btw

\* \* \* \* \*

**UC:** so how close have you come with little
**UC:** any exp at all
**pervyguy4yng: touching mostly**
**UC: nice your own?**
**pervyguy4yng: I've been trying with my niece**
**UC:** mmm, how old is she
**pervyguy4yng:** I don't have a little girl of my own... sure wish I did though
**UC: how old is the neice**
**pervyguy4yng:** 9
**UC:** hot, touch her pussy yet or spy on her
**pervyguy4yng: I've touched her pussy while she sleeps... love spying on her... I have peep hole I drilled to watch her when she's in the bathroom**
**UC:** mmmmm, that is so hot, do you have any spy pics of her
**pervyguy4yng: not yet... not that I haven't been trying... just I haven't had any come out yet**
**UC:** ahh, cool
**pervyguy4yng: it's hard to aim a cell phone and take a pic and jerk off at the same time... lol**
**UC:** lol, i understand that, what is the best vid you have that you jerk to
**pervyguy4yng:** hmmm... probably one that's been passed around a lot in neat chat... lol
**UC:** lol, i love the mom with like 5 year old girls
**pervyguy4yng: I don't know if I've seen that one. I like the one where dad is eating out the little girl and she tells him to lick her harder**

On January 21 and 22, 2014, the UC and the Defendant continued their conversation via text messaging. The Defendant utilized the cellular telephone number he provided to the UC in the above chat of 443-207-3377(3377). During the chat with the UC, the Defendant told the UC his name was "Mike", he was 34, former military, with two (2) boys of his own, and his wife died last year of multiple sclerosis. Subsequent investigation revealed this information about the defendant to be accurate.

2

On January 21, 2014, the UC sent two (2) non-pornographic images during the YIM chat with the Defendant. One of the images depicted a prepubescent child from the neck down in a pair of underwear, and the second image depicted a prepubescent child wearing panties and displaying a note. The UC received one (1) video and six (6) images from the Defendant during his on-line YIM chat as described below:

**Image titled: - eat daugh~1:** The video is of what appears to be a prepubescent female laying on a bed naked from the waist down. An adult male wearing blue shorts performs oral sex on the prepubescent female, who is heard to say "do it hard".

**Image titled: 135797966186:** The image is of what appears to be a naked prepubescent female facing the camera straddling a naked adult male inserting his penis into her vagina.

**Image titled: 13601899646_2005_05_08_17_35_23:** The image is what appears to be a naked prepubescent female lying down with a nude adult male kneeling between her legs inserting his penis into her vagina.

**Image titled: 13601852246_2004_01_15_21_12_38:** The image is what appears to be a naked prepubescent female performing oral sex simultaneously on two (2) naked adult males sitting opposite each other.

**Image titled: 107:** The image is what appears to be a close up image of a naked prepubescent female lying down on what appears to be a blue blanket with her legs spread and what appears to be a white substance covering her vaginal area.

**Image titled: -_00a(3):** The image is of what appears to be a partially naked prepubescent female laying on her back on a pink blanket or sheet, wearing a white dress with the bottom of the dress flipped up, her legs are spread open, with what appears to be an adult male hand holding one of her legs back, and what appears to be a white substance covering her vaginal area.

**Image titled: -0 pa1 (287):** The image is of what appears to be a naked prepubescent female on her knees on the floor, facing an adult male, naked from the waist down (with his shoes on) standing in front of the prepubescent female. The prepubescent female is performing oral sex on the adult male.

Subsequent FBI investigation revealed that the telephone numbers and account names associated with LovesLittleGirls and pervyguy4yng, were used by the Defendant, who then lived at 130 Mike Court, Elkton, Maryland, 21921. A February 10, 2014, search of Jordon's residence resulted in the seizure of numerous items, including those identified in paragraph 11 of the plea agreement, which he used to connect with and communicate on the internet. Jordon admitted to accessing websites displaying child pornography and communicating with the UC. He also admitted to sending child pornography to an unknown male in DC [the UC]. A forensic

examination of the seized material showed Jordon to be in possession of more than 600 images of child pornography, in both video and single image files, including copies of the material he sent to the UC on January 21, 2014.

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Micheal Jordon, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt. I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it.

_____
Micheal P. Jordon
Defendant

I am the defendant's attorney. I have carefully reviewed the statement of facts with him.

_____
Charles L. Waechter, Esq.

4